JPL/TJT:PJC
F. #2021R00440

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUN 25 2024   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA

- against -

FENG JIANG,
　　also known as "Jeff,"

　　　　　　　　　Defendant.

------------------------------X

I N D I C T M E N T

Cr. No. **CR-24  264**
(T. 18, U.S.C., §§ 371, 982(a)(1),
982(a)(7), 982(b)(1), 1349, 1956(h),
1956(a)(1)(B)(i), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

**VITALIANO, J.**

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.　Background

　　A.　Medicare and Medicaid

　　　　1.　Medicare was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicare Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

　　　　2.　Medicare was divided into multiple parts. Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices and home health agencies. Medicare Part B covered outpatient hospital services and professional services provided by physicians and other providers. Medicare Part C—also known as Medicare

Advantage—offered beneficiaries the opportunity to secure coverage from private insurers for many of the same services that were provided by Parts A and B, in addition to certain mandatory and optional supplemental benefits, including over-the-counter ("OTC") benefits. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare.

        3. Medicaid was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including New York State. Individuals who received benefits under Medicaid were referred to as "recipients."

        4. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services.

        5. In New York State, Medicaid provided coverage to its recipients for prescription drugs. Medicaid recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through Medicaid Managed Care plans, which were administered by private insurance companies that were paid by Medicaid.

        6. As part of their insurance benefits, some Medicare beneficiaries and Medicaid recipients received a certain amount of credit per month that could be spent on eligible OTC non-prescription items such as analgesics, diabetes supplies, antihistamines, weight management supplies, sleep aids, vitamins, toothpaste, durable medical equipment and other items. OTC money could not be spent on items such as cosmetics, hair care products, dry-skin lotions and perfumes. The monthly OTC credit was pre-loaded onto debit cards known as

"over-the-counter cards" or "OTC Cards," which were issued to recipients by the plan sponsors. Any funds that were not used by the end of the month were forfeited, and the OTC Cards were reloaded each month with refreshed funds. Pharmacies generally dispensed OTC benefits to Medicare beneficiaries and Medicaid recipients by swiping the OTC Cards through an electronic payment system that debited the cost of approved OTC items.

7. Medicare, Medicare Advantage, Medicaid and Medicaid Managed Care plans (collectively the "Plans") were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and as referenced in Title 18, United States Code, Section 1347, and Title 42, United States Code, Section 1320a-7b(f).

8. Medical providers must enroll with Medicare and Medicaid in order to submit claims for reimbursement to the Plans. Claims are typically submitted electronically and identify the service or good provided to the patient. Medical providers were authorized to submit claims to the Plans only for services they actually rendered and were required to maintain patient records verifying the provision of services.

9. By submitting a claim to the Plans, a provider certified, among other things, that the services were rendered to the patient, were medically reasonable and necessary and were not procured as a result of kickbacks or bribes.

10. CMS assigned pharmacies a national provider identification number ("NPI"). A pharmacy dispensing medications to a beneficiary used its assigned NPI when submitting a claim for reimbursement under Medicare Part D. A pharmacy was permitted to submit claims for reimbursement under Medicare Part D only for medications actually dispensed and was required to maintain records verifying that it dispensed the medications.

11. A pharmacy could participate in the Medicare Part D program by entering into a retail network agreement: (a) directly with a Part D Plan; (b) with one or more Pharmacy Benefit Managers ("PBMs"); or (c) with a Pharmacy Services Administration Organization ("PSAO"). A PBM acted on behalf of one or more Part D Plans. Through a Part D Plan's PBM, a pharmacy could join a Part D Plan network. A PSAO contracted with PBMs on behalf of the pharmacy.

12. Typically, a Medicare beneficiary enrolled in a Part D Plan obtained prescription medications from a pharmacy authorized by the beneficiary's Part D Plan. After filling a beneficiary's prescription, the authorized pharmacy submitted the claim either directly to a Part D Plan or to a PBM that represented the Part D Plan. The pharmacy provided the beneficiary's identification number as well as the pharmacy's NPI with the claim. The Part D Plan or the PBM determined whether the pharmacy was entitled to payment for each claim. Then, the Part D Plan or PBM, either directly or through a PSAO, reimbursed the pharmacy for the claim.

B. The Defendant and Relevant Entities and Individuals

13. The defendant FENG JIANG, also known as "Jeff," was an owner of Elmcare Pharmacy Inc. ("Elmcare"), NY Elm Pharmacy Inc. ("NY Elm"), NY Health Pharmacy Inc. ("NY Health"), 88 Pharmacy Inc. ("88 Pharmacy") and Silver Care Pharmacy Inc. ("Silver Care") (collectively, the "Pharmacies"), which were retail pharmacies located in Flushing, New York. NY Elm maintained a bank account with an account number ending in 1939 (the "x1939 Account") at Financial Institution-1, an entity the identity of which is known to the Grand Jury. JIANG was a signatory on the x1939 Account.

14.   Co-conspirator-1, an individual whose identity is known to the Grand Jury, was an employee of Elmcare and a manager and owner of NY Elm.

15.   Taesung Kim, also known as "Terry Kim" ("Kim"), was an owner of Elmcare, NY Elm, NY Health, 88 Pharmacy and Silver Care.

16.   Medical Practice-1, an entity the identity of which is known to the Grand Jury, was a medical practice in Flushing, New York.

17.   Individual-1, an individual whose identity is known to the Grand Jury, was enrolled as a Medicare beneficiary and Medicaid recipient and filled prescriptions at Elmcare and NY Elm.

II.   The Fraudulent Scheme

18.   In or about and between September 2015 and December 2022, the defendant FENG JIANG, together with others, agreed to execute and executed a scheme to submit and cause the submission of false and fraudulent claims to the Plans for the dispensing of pharmaceutical and OTC products that were medically unreasonable and unnecessary, procured by the payment of kickbacks and bribes and not provided to Medicare beneficiaries and Medicaid recipients.

19.   As part of the scheme, the defendant FENG JIANG directed Elmcare and NY Elm employees, including Co-conspirator-1, to offer illegal kickbacks and bribes in the form of supermarket gift certificates to all Medicare beneficiaries and Medicaid recipients who filled prescriptions at Elmcare and NY Elm.

20.   The defendant FENG JIANG further directed Elmcare and NY Elm employees, including Co-conspirator-1, to bill the Plans for OTC items that were not actually

dispensed and instead provide the beneficiaries and recipients the equivalent value in cash as an illegal kickback and bribe in exchange for bringing prescriptions to Elmcare and NY Elm.

21. As further part of the scheme, Elmcare and NY Elm employees, including Co-conspirator-1, also referred Medicare beneficiaries and Medicaid recipients, including Individual-1, to Medical Practice-1, where they were prescribed medically unnecessary topical medications and pain patches to be filled at Elmcare and NY Elm.

22. In approximately 2022, Elmcare lost its ability to bill certain Plans, at which point the defendant FENG JIANG fraudulently indicated Elmcare was closing and transferring its customers to Silver Care, when in fact Elmcare was changing its name to NY Elm and installing Co-conconspirator-1 as the owner of record.

23. In or about and between September 2015 and December 2022, Medicare paid Elmcare and NY Elm approximately $23.8 million and Medicaid paid Elmcare and NY Elm approximately $55,000 for prescriptions that were medically unreasonable and unnecessary and induced by the payment of illegal kickbacks and bribes.

24. In or about and between September 2015 and December 2022, the defendant FENG JIANG, together with others, including Kim, agreed to execute and executed a scheme to engage in deceptive acts and contrivances intended to hide information, mislead, avoid suspicion and avert further inquiry into their health care fraud scheme.

25. In order to obtain cash to pay kickbacks to Medicare beneficiaries and Medicaid recipients at the Pharmacies, and in order to obtain cash that could be dispersed as unrecorded profits among the owners of the Pharmacies, the defendant FENG JIANG and Kim wrote checks to various trading companies that gave the false and fraudulent appearance of legitimate business expenses, but in reality, were actually used to disguise the fact that the

checks were written to generate cash that was used to distribute profits from the scheme and to pay illegal kickbacks and bribes.

26.     The defendant FENG JIANG and Kim, together with others, also transferred fraud proceeds between the Pharmacies to disguise the source, nature and ownership of those proceeds.

## COUNT ONE
(Conspiracy to Commit Health Care Fraud)

27.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

28.     In or about and between September 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FENG JIANG, also known as "Jeff," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud Medicare, Medicare Advantage, Medicaid and Medicaid Managed Care plans, which are health care benefits programs as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefits programs in connection with the delivery of a payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Defraud the United States and Pay Health Care Kickbacks)

29.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

30. In or about and between September 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FENG JIANG, also known as "Jeff," together with others, did knowingly and willfully conspire:

(a) to defraud the United States, by impairing, impeding, obstructing and defeating through deceitful means, the lawful government functions of CMS, an agency of the United States, in its administration of Medicare and Medicaid; and

(b) to offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such person and persons to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering any good, facility, service and item for which payment may be made in whole or in part under a Federal health care program, to wit: Medicare, Medicare Advantage, Medicaid and Medicaid Managed Care, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

31. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant FENG JIANG, also known as "Jeff," together with others, committed and caused the commission of, among others, the following:

### OVERT ACTS

(a) On or about November 16, 2020, JIANG, as "President" of 88 Pharmacy, signed a New York State Board of Pharmacy application to license 88 Pharmacy.

(b) On or about December 3, 2020, JIANG opened the x1939 Account.

(c) On or about January 9, 2021, JIANG signed a check from Silver Care payable to Company-1, an entity the identity of which is known to the Grand Jury, in the amount of approximately $41,026.

(d) On or about April 14, 2021, JIANG signed a check from NY Health payable to Company-2, an entity the identity of which is known to the Grand Jury, in the amount of approximately $50,000.

(e) On or about July 7, 2022, JIANG, as "President" of Elmcare, signed a New York State Board of Pharmacy discontinuance form falsely indicating that Elmcare's customers were being transferred to Silver Care.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Money Laundering Conspiracy)

32. The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between September 2015 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FENG JIANG, also known as "Jeff," together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: acts and activities constituting an offense involving a federal health care offense, in violation of Title 18, United States Code, Sections 371, 1347 and 1349, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such financial transactions were designed in whole and in part to conceal and

disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNTS FOUR THROUGH FIVE
(Money Laundering)

34. The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

35. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant FENG JIANG, also known as "Jeff," together with others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions in and affecting interstate commerce, to wit: deposits, withdrawals and transfers of funds and monetary instruments, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: acts and activities constituting an offense involving a federal health care offense, in violation of Title 18, United States Code, Sections 371, 1347 and 1349, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more of the specified unlawful activities, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| FOUR | January 9, 2021 | Transfer of approximately $41,026 by check from Silver Care to Company-1. |
| FIVE | April 14, 2021 | Transfer of approximately $50,000 by check from NY Health to Company-2. |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE AND TWO

36.     The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offenses.

37.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE THROUGH FIVE

38. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Three through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

39. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

13

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____s/_____
FOREPERSON

*By Carolyn Pokorny, Assistant US Attorney*
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*Glenn S. Leon/PJC*
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE